CENTER FOR DISABILITY ACCESS
Isabel Masanque, Esq., SBN 292673
Ray Ballister, Jr., Esq., SBN 111282
Phyl Grace, Esq., SBN 171771
Dennis Price, Esq., SBN 279082
Mail: PO Box 262490
San Diego, CA 92196-2490
Delivery: 9845 Erma Road, Suite 300
San Diego, CA 92131
(858) 375-7385; (888) 422-5191 fax
phylg@potterhandy.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Chris Langer**,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>**Nati's,** a California Corporation; and Does 1-10,<br><br>　　　　Defendants. | **Case No.** '18CV0170 W   BLM<br><br>**Complaint For Damages And Injunctive Relief For** Violations Of: American's With Disabilities Act; Unruh Civil Rights Act |

　　Plaintiff Chris Langer complains of Defendants Nati's, a California Corporation; and Does 1-10 ("Defendants") and alleges as follows:

　　**PARTIES:**

　1.　Plaintiff is a California resident with physical disabilities. He is a paraplegic who cannot walk and who uses a wheelchair for mobility. He has a specially equipped van with a ramp that deploys out of the passenger side of his van and he has a Disabled Person Parking Placard issued to him by the State of California.

　2.　Defendant Nati's owned the real property located at or about 1852

1

Complaint

Bacon Street, San Diego, California, in November 2017.

3. Defendant Nati's owns the real property located at or about 1852 Bacon Street, San Diego, California, currently.

4. Defendant Nati's owned the Nati's Mexican Restaurant located at or about 1852 Bacon Street, San Diego, California, in November 2017.

5. Defendant Nati's owns the Nati's Mexican Restaurant ("Restaurant") located at or about 1852 Bacon Street, San Diego, California, currently.

6. Plaintiff does not know the true names of Defendants, their business capacities, their ownership connection to the property and business, or their relative responsibilities in causing the access violations herein complained of, and alleges a joint venture and common enterprise by all such Defendants. Plaintiff is informed and believes that each of the Defendants herein, including Does 1 through 10, inclusive, is responsible in some capacity for the events herein alleged, or is a necessary party for obtaining appropriate relief. Plaintiff will seek leave to amend when the true names, capacities, connections, and responsibilities of the Defendants and Does 1 through 10, inclusive, are ascertained.

**JURISDICTION & VENUE:**

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 1343(a)(3) & (a)(4) for violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq.

8. Pursuant to supplemental jurisdiction, an attendant and related cause of action, arising from the same nucleus of operative facts and arising out of the same transactions, is also brought under California's Unruh Civil Rights Act, which act expressly incorporates the Americans with Disabilities Act.

9. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) and is founded on the fact that the real property which is the subject of this action is

Complaint

located in this district and that Plaintiff's cause of action arose in this district.

**FACTUAL ALLEGATIONS:**

10. Plaintiff went to the Restaurant in November 2017 to eat.

11. The Restaurant is a facility open to the public, a place of public accommodation, and a business establishment.

12. Restrooms are one of the facilities, privileges and advantages offered by Defendants to patrons of the Restaurant.

13. The first of the two restroom doorway passages was less than 32 inches in width and inaccessible to wheelchair users. The restroom doorway was 27.5 inches wide during Plaintiff's visit.

14. Currently, the restroom doorway passage width is less than 32 inches and inaccessible to wheelchair users.

15. Because of the inaccessible restroom doorway, Plaintiff tried to use the ladies restroom but the restroom doorway was also inaccessible because its width was also too narrow.

16. Plaintiff complained of the inaccessible restroom to an employee at the Restaurant. As a result of not being able to use the restroom, the plaintiff got his food to go rather than to dine in.

17. Plaintiff personally encountered this barrier.

18. This inaccessible restroom denied the plaintiff full and equal access and caused him difficulty and frustration.

19. Additionally, although Plaintiff did not personally confront the barrier, the toilet stall was improperly configured and too small for wheelchair users, measuring 44 inches in width and 78 inches in depth.

20. The restroom mirror was mounted on the wall so that its bottom edge was more than 40 inches above the finish floor.

21. Instead of providing two grab bars on adjacent or parallel walls for use

by persons with disabilities who need to transfer to the toilet, there was only one grab bar.

22. The grab bar was 30 inches above the floor and below the minimum height permitted.

23. There was no clear floor space in front of the disposable toilet seat cover dispenser because it was mounted on the wall behind the toilet.

24. The plumbing underneath the sink was not wrapped to protect against burning contact.

25. Currently, the toilet stall is improperly configured and too small for wheelchair users, measuring 44 inches in width and 78 inches in depth.

26. Currently, the restroom mirror is mounted on the wall so that its bottom edge is more than 40 inches above the finish floor.

27. Currently, instead of providing two grab bars on adjacent or parallel walls for use by persons with disabilities who need to transfer to the toilet, there is only one grab bar.

28. Currently, the grab bar is 30 inches above the floor and below the minimum height permitted.

29. Currently, there is no clear floor space in front of the disposable toilet seat cover dispenser because it is mounted on the wall behind the toilet.

30. Currently, the plumbing underneath the sink is not wrapped to protect against burning contact

31. Parking spaces are another one of the facilities, privileges and advantages offered by Defendants to patrons of the Restaurant.

32. Unfortunately, one of the parking stalls and access aisles were not level with each other.

33. One of the parking spaces and access aisles had slopes greater than 2.1%.

34. Currently, one of the parking stalls and access aisles are not level.

4

Complaint

35. Currently, one of the parking stalls and access aisles have slopes greater than 2.1%.

36. The Defendants had no policy or plan in place to make sure that the parking spaces reserved for persons with disabilities remained useable prior to plaintiff's visit.

37. The Defendants have no policy or plan in place to make sure that the parking spaces reserved for persons with disabilities remain useable, currently.

38. Paths of travel are also one of the facilities, privileges, and advantages offered by Defendants to patrons of the Restaurant.

39. There were two rear entrances with a raised threshold that measured greater than ½ inch.

40. The path of travel to the front entrance of the Restaurant required a person to navigate a step for which there was no ramp.

41. Currently, there are two rear entrances with a raised threshold that measure greater than ½ inch.

42. Currently, the path of travel to the front entrance of the Restaurant requires a person to navigate a step for which there is no ramp.

43. Transaction counters are one of the facilities, privileges, and advantages offered by Defendants to patrons of the Restaurant.

44. The transaction counter at the Restaurant was more than 36 inches in height. In fact, the transaction counter is 42 inches high.

45. There was no lowered, 36-inch portion of the transaction counter at the Restaurant for use by persons in wheelchairs.

46. Currently, the transaction counter at the Restaurant is more than 36 inches in height.

47. Currently, there is no lowered, 36 inch portion of the transaction counter at the Restaurant for use by persons in wheelchairs.

Complaint

48. Plaintiff would like to return and patronize the Restaurant but will be deterred from visiting until the defendants cure the violations.

49. The violations identified above are easily removed without much difficulty or expense. They are the types of barriers identified by the Department of Justice as presumably readily achievable to remove and, in fact, these barriers are readily achievable to remove. Moreover, there are numerous alternative accommodations that could be made to provide a greater level of access if complete removal were not achievable.

50. For example, the mirror in the restroom could be removed or lowered to a compliant height, for little to no cost.

51. Wrap can be installed under the sink at a cost of no more than $25.

52. Additionally, there are numerous paint/stripe companies that will stripe a level parking stall and access aisle and install proper signage on short notice and for a modest price, sometimes as low as $300, in full compliance with federal and state access standards.

53. Another common barrier removal project is modifying transaction counters to make a portion of the counter accessible. This is a simple construction task, well within the capabilities of any general contractor. The task can be completed easily and for a modest price.

54. Plaintiff is and has been deterred from returning and patronizing the Restaurant because of his knowledge of the illegal barriers that exist. Plaintiff will, nonetheless, return to the business to assess ongoing compliance with the ADA and will return to patronize the Restaurant as a customer once the barriers are removed.

55. Given the obvious and blatant violation, the plaintiff alleges, on information and belief, that there are other violations and barriers on the site that relate to his disability. Plaintiff will amend the Complaint to provide proper notice regarding the scope of this lawsuit once he conducts a site

Complaint

inspection. However, please be on notice that the plaintiff seeks to have all barriers related to his disability remedied. See *Doran v. 7-11*, 506 F.3d 1191 (9th Cir. 2008) (holding that once a plaintiff encounters one barrier at a site, he can sue to have all barriers that relate to her disability removed regardless of whether he personally encountered them).

56. Additionally, on information and belief, the plaintiff alleges that the failure to remove these barriers was intentional because: (1) these particular barriers are intuitive and obvious; (2) the defendants exercised control and dominion over the conditions at this location and, therefore, the lack of accessible facilities was not an "accident" because, had the defendants intended any other configuration, they had the means and ability to make the change.

**I. FIRST CAUSE OF ACTION: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990** (On behalf of plaintiff and against all defendants (42 U.S.C. section 12101, et seq.)

57. Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

58. Under the ADA, it is an act of discrimination to fail to ensure that the privileges, advantages, accommodations, facilities, goods and services of any place of public accommodation is offered on a full and equal basis by anyone who owns, leases, or operates a place of public accommodation. See 42 U.S.C. § 12182(a). Discrimination is defined, inter alia, as follows:

    a. A failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the

Complaint

        accommodation would work a fundamental alteration of those services and facilities. 42 U.S.C. § 12182(b)(2)(A)(ii).

    b. A failure to remove architectural barriers where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). Barriers are defined by reference to the ADAAG, found at 28 C.F.R., Part 36, Appendix "D."

    c. A failure to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs or to ensure that, to the maximum extent feasible, the path of travel to the altered area and the bathrooms, telephones, and drinking fountains serving the altered area, are readily accessible to and usable by individuals with disabilities. 42 U.S.C. § 12183(a)(2).

59. All doors to restrooms must have a minimum clear opening of 32 inches with the door open 90 degrees, measured between the face of the door and the opposite stop. 1991 Standards § 4.22.2; 4.13.5; 2010 Standards § 404.2.3.

60. Here, the failure to provide the 32 inch wide restroom doorway opening is a violation of the ADA.

61. Where a toilet stall is provided in a restroom in existing facilities, the size and arrangement of the standard toilet stall shall comply with either Fig. 30(a) (standard stall) or Figure 30(b) (alternate stall). 1991 Standards § 4.17.3. A standard stall must be at least 60 inches wide by 56 inches deep (if the toilet is wall mounted) or 59 inches deep if the toilet is floor mounted. 1991 Standards § Figure 30(a). An alternate stall must meet one of two configurations: either (1) be exactly 36 inches by at least 66 inches deep (if the toilet is wall mounted) or 69 inches (if the toilet is floor mounted) and provide front transfer grab bars or (2) be at least 48 inches wide by at least by

Complaint

at least 66 inches deep (if the toilet is wall mounted) or 69 inches (if the toilet is floor mounted) and provide side transfer grab bars. 1991 Standards § Figure 30(b).

62. Here, the toilet stall does not meet any option under the ADA and is in violation of the law.

63. Mirrors shall be mounted with the bottom edge of the reflecting surface no higher than 40 inches above the finish floor. 1991 Standards § 4.19.6; 2010 Standards § 603.3.

64. Here, the mirror was mounted higher than the maximum permitted and is a violation of the ADA.

65. For a toilet to be considered accessible under the ADA, there must be two grab bars on walls adjacent to the toilet to assist persons with disabilities to transfer to the toilet. 1991 Standards § 4.16.4; 2010 Standards § 604.5.

66. Here, the failure to provide compliant grab bars is a violation of the ADA.

67. Grab bars at the toilet must be mounted between 33 and 36 inches in height. 1991 Standards § 4.16.4 & Fig. 29; 2010 Standards § 609.4.

68. Here, the failure to ensure that the grab bars were mounted within the range required by the ADA is a violation of the law.

69. Clear floor space that allows a forward or a parallel approach by a person using a wheelchair shall be provided at controls, dispensers, receptacles, and other operable equipment. 1991 Standards § 4.27.2; 2010 Standards § 309.2.

70. Here, the failure to provide such floor space is a violation of the ADA.

71. Hot water and drain pipes under lavatories must be insulated or otherwise configured to protect against contact. 1991 Standards § 4.19.4; 2010 Standards §606.5.

72. Here, the failure to wrap the plumbing underneath the sink is a violation

Complaint

of the ADA.

73. Under the 1991 Standards, parking spaces and access aisles must be level with surface slopes not exceeding 1:50 (2%) in all directions. 1991 Standards § 4.6.3. Here, the access aisle is not level and has a ramp taking up part of the access aisle. Under the 2010 Standards, access aisles shall be at the same level as the parking spaces they serve. Changes in level are not permitted. 2010 Standards 502.4. "Access aisle are required to be nearly level in all directions to provide a surface for wheelchair transfer to and from vehicles." 2010 Standards § 502.4 Advisory. Specifically, built up curb ramps are not permitted to project into access aisles and parking spaces. *Id.* No more than a 1:48 slope is permitted. 2010 Standards § 502.4.

74. Here, the failure to provide level parking is a violation of the law.

75. Thresholds at doorways cannot exceed ¾ inches for exterior sliding doors and ½ for all other doors. 1991 Standards § 4.13.8; 2010 Standards § 404.2.5.

76. Here, the failure to provide a threshold less than ½ inch at the rear entrance doors is a violation of the ADA.

77. There must be an accessible path of travel that connects all buildings, elements and spaces on the same site. 1991 Standards § 4.3.2. To be considered an accessible route, there cannot be a stair or step. 1991 Standards § 4.3.8. Any such change in level measuring greater than ½ inch must have a ramp or lift. *Id.* 2010 Standards § 303.4.

78. Here, the unramped step in front of the Restaurant is a violation of the ADA.

79. In areas used for transactions where counters have cash registers and are provided for sales or distribution of goods or services to the public, at least one of each type shall have a portion of the counter which is at least 36 inches in length with a maximum height of 36 inches above the floor. 1991 Standards

§ 7.2(1). Under the 2010 Standards, where the approach to the sales or service counter is a parallel approach, such as in this case, there must be a portion of the sales counter that is no higher than 36 inches above the floor and 36 inches in width and must extend the same depth as the rest of the sales or service counter top. 2010 Standards § 904.4 & 904.4.1.

80. Here, no such accessible transaction counter has been provided, in violation of the ADA.

81. A public accommodation must maintain in operable working condition those features of its facilities and equipment that are required to be readily accessible to and usable by persons with disabilities. 28 C.F.R. § 36.211(a).

82. Here, the failure to ensure that the accessible facilities were available and ready to be used by the plaintiff is a violation of the law.

83. Given its location and options, plaintiff will continue to desire to patronize the Restaurant but he has been and will continue to be discriminated against due to the lack of accessible facilities and, therefore, seeks injunctive relief to remove the barriers.

**II. SECOND CAUSE OF ACTION: VIOLATION OF THE UNRUH CIVIL RIGHTS ACT** (On behalf of plaintiff and against all defendants) (Cal Civ § 51-53)

84. Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

85. Because the defendants violated the plaintiff's rights under the ADA, they also violated the Unruh Civil Rights Act and are liable for damages. (Civ. Code § 51(f), 52(a).)

86. Because the violation of the Unruh Civil Rights Act resulted in difficulty, discomfort or embarrassment for the plaintiff, the defendants are

Complaint

also each responsible for statutory damages, i.e., a civil penalty. (Civ. Code § 55.56(a)-(c).)

**PRAYER**:

Wherefore, Plaintiff prays that this court award damages and provide relief as follows:

1. For injunctive relief, compelling defendants to comply with the Americans with Disabilities Act and the Unruh Civil Rights Act. Note: the Plaintiff is not invoking section 55 of the California Civil Code and is not seeking injunctive relief under the Disabled Persons Act at all.

2. Damages under the Unruh Civil Rights Act which damages provide for actual damages and a statutory minimum of $4,000 per incident.

3. Reasonable attorney fees, litigation expenses and costs of suit, pursuant to 42 U.S.C. § 12205; Cal. Civ. Code § 52.

Dated: January 16, 2018         CENTER FOR DISABILITY ACCESS

By: _____/s/ Isabel P. M._____
Isabel Masanque, Esq.
Attorney for Plaintiff

Complaint